**[J-66-2019] [MO: Todd, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

| | | |
|---|---|---|
| IN THE INTEREST OF: N.B.-A., A MINOR | : | No. 11 EAP 2019 |
| | : | |
| | : | Appeal from the Order of Superior |
| | : | Court entered on February 19, 2019 at |
| APPEAL OF: E.A., MOTHER | : | No. 893 EDA 2018 affirming in part |
| | : | reversing in part the Order dated |
| | : | March 16, 2018 in the Court of |
| | : | Common Pleas, Philadelphia County, |
| | : | Family Court Division at No. CP-51- |
| | : | DP-0002607-2016. |
| | : | |
| | : | ARGUED: September 10, 2019 |

**CONCURRING AND DISSENTING OPINION**

**JUSTICE MUNDY**                                **DECIDED: January 22, 2020**

I join the Majority's conclusion that the evidentiary presumption at Section 6381(d) does not apply in this case. I write in dissent, however, as on this record, I would affirm the trial court which found child abuse was established under the totality of the evidence without reference to the presumption.

In my view, the determination as to whether Mother's actions amounted to child abuse in light of the evidence is best left to the trial court, and the record supports its findings in this case. As this Court has recognized, "we are not in a position to make the close calls based on fact-specific determinations." *In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010). It is the trial judges that have the opportunity to observe the witnesses and assess their credibility, not the appellate courts which must base determinations on a cold reading of the record. *See id.* Particularly in the context of dependent children, "even where the facts could support an opposite result, . . . an appellate court must resist the urge to

second guess the trial court and impose its own credibility determinations and judgment[.]" *In re Adoption of S.P.*, 47 A.3d 817, 826-27 (Pa. 2010).

In this case, the credited testimony and evidence was clear that Mother repeatedly lied about the presence of the abuser in her home. She further presented with an affect that suggested to the professionals involved in the case that she was not appropriately responding to the reality that her young daughter was sexually assaulted. *See e.g.* N.T., 3/16/18, at 22 (DHS investigator Sharina Johnson describing Mother's reaction as "very alarming"). Under the totality of the evidence presented, and judging the credibility and demeanor of the witnesses, the trial court concluded Mother was aware that Stepbrother posed a risk to Child and consciously disregarded it. The trial court found it significant that Mother lied regarding who was in her home. *See id.* at 82-83 (explaining, in light of Child's diagnosis, "I find it troubling that mom would testify or give information that's not valid or accurate.") The trial court further found as a fact that Mother put the interests of the men in her home "over the well-being of her child." *Id.* at 83.

Accordingly, under these particular facts, I find the evidence supports the trial court's determination. Specifically, there is no dispute Child was sexually abused and contracted Chlamydia; Mother lied about the adult men with whom she and Child lived when she initially brought Child in the emergency room, and a number of times thereafter; and Mother appeared alarmingly at ease with the diagnosis, with knowledge that it was the result of her child's sexual assault. As such, there was clear and convincing evidence for the trial court to find that Mother recklessly caused or created a likelihood of sexual abuse occurring through her failure to act.

I further disagree with the Majority's attempt to construct alternate narratives to explain Mother's bizarre reaction to learning her six-year-old child contracted a sexually-transmitted infection and was a victim of sexual abuse. *See* Majority Op. at 18. Of course,

an appellate court is not bound by inferences deduced from the evidence. However, I am troubled by the Majority's attempt to rationalize Mother's behavior and recast it in a light most favorable to her on a cold record when it was the trial court that had the opportunity to observe the testimony and make its credibility determinations. The trial court clearly stated it "did not find [Mother] to be credible[,]" a finding solely within the province of the factfinder. N.T., 3/16/18, at 85.

Because I would affirm the decision of the trial court which found DHS met its burden of proving Mother was a perpetrator of child abuse based on her failure to protect Child from the sexual abuse she suffered, I dissent.